UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAWN MURRAY,

     Plaintiff,

v.            1:17-CV-0103
            (GTS/WBC)
COMMISSIONER OF SOCIAL SECURITY,

     Defendant.
_____

APPEARANCES:      OF COUNSEL:

LEGAL AID SOCIETY OF     Paul Tighe, Esq.
NORTHEAST NEW YORK - ALBANY
 Counsel for Plaintiff
55 Colvin Ave.
Albany, NY 12206

U.S. SOCIAL SECURITY ADMIN.   Kristina Cohn, Esq.
OFFICE OF REG'L GEN. COUNSEL – REGION II
 Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

   This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 16.)  This case has proceeded in accordance with General

Order 18.

   Currently before the Court, in this Social Security action filed by Shawn Murray

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings.  (Dkt. Nos. 14, 15.)  For the reasons set forth

below, it is recommended that Plaintiff's motion be denied and Defendant's motion be

granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

Plaintiff was born in 1965.  (T. 282.)  He completed the 8th grade.  (T. 303.)

Generally, Plaintiff's alleged disability consists of low back impairment, asthma, and a

hip impairment.  (T. 302.)  His alleged disability onset date is September 19, 2014. (T.

363.)

### B.    Procedural History

On September 19, 2012, Plaintiff applied for Supplemental Security Income

("SSI") under Title XVI of the Social Security Act.  (T. 282.)  Plaintiff's application was

initially denied, after which he timely requested a hearing before an Administrative Law

Judge ("the ALJ").  On July 8, 2014, and again on February 5, 2015, Plaintiff appeared

before the ALJ, Michelle Marcus.  (T. 50-62, 63-92.)  On May 6, 2015, ALJ Marcus

issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T.

7-26.)  On December 13, 2016, the Appeals Council ("AC") denied Plaintiff's request for

review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)

Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and

conclusions of law.  (T. 12-20.)  First, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since September 29, 2014[1].  (T. 12.)  Second, the ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, cervicalgia, status post left hip surgery, and an impairment in the left shoulder, suggestive of a torn rotator cuff or neurological deficit.  (T. 13.)  Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 14.)  Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work.  (T. 14.)[2]  The ALJ determined Plaintiff could occasionally bend, stoop, climb ladders or scaffolds, kneel, crouch, crawl, and use foot controls; could engage in unlimited use of the right upper extremity; occasionally use the left upper extremity for fine and gross manipulation, overhead reaching, and other reaching; and must avoid unprotected heights and moving mechanical parts.  (*Id.*)  Fifth, the ALJ determined that Plaintiff had no past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform.  (T. 19-20.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of his motion for judgment on the pleadings.  First, Plaintiff argues the ALJ's RFC determination was not supported

---

[1]    Plaintiff request that his alleged onset date be amended to September 29, 2014 in a letter to the ALJ.  (T. 363.)

[2]    Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  20 C.F.R. § 416.967(b).

by substantial evidence. (Dkt. No. 14 at 12-19 [Pl.'s Mem. of Law].) Second, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence. (*Id.* at 19-21.) Third, and lastly, Plaintiff argues the ALJ's step five determination was not supported by substantial evidence. (*Id.* at 21-23.)

### B.    Defendant's Arguments

In response, Defendant makes three arguments. First, Defendant argues the ALJ properly evaluated the medical evidence of record in determining Plaintiff's RFC. (Dkt. No. 15 at 6-11 [Def.'s Mem. of Law].) Second, Defendant argues the ALJ's credibility determination was supported by substantial evidence. (*Id.* at 11-13.) Third, and lastly, Defendant argues the ALJ's step five determination was supported by substantial evidence. (*Id.* at 13-15.)

## III.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

416.920.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity;
> (2) whether the claimant has a severe impairment or combination of
> impairments; (3) whether the impairment meets or equals the severity of the
> specified impairments in the Listing of Impairments; (4) based on a 'residual
> functional capacity' assessment, whether the claimant can perform any of
> his or her past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the claimant
> can perform given the claimant's residual functional capacity, age,
> education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

## IV.    ANALYSIS

### A.    The ALJ's Weighing of the Medical Evidence and RFC Determination.

The RFC is an assessment of "the most [Plaintiff] can still do despite [his or her]

limitations." 20 C.F.R. § 416.945(a)(1).  In formulating Plaintiff's RFC, the ALJ must

assess all of the relevant medical and other evidence in the record.  *Id.* at §

416.945(a)(3).

The relevant factors considered in determining what weight to afford an opinion

include the length, nature and extent of the treatment relationship, relevant evidence

which supports the opinion, the consistency of the opinion with the record as a whole,

and the specialization (if any) of the opinion's source.  20 C.F.R. § 416.927(c)(1)-(6)[3].

The opinion of a treating source will be given controlling weight if it "is well supported by

---

[3]    Effective March 27, 2017, 20 C.F.R. § 416.927 has been amended, as have other
regulations and SSRs cited herein.  Nonetheless, because Plaintiff's social security application was filed
before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the
earlier regulations and SSRs.

medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Id.* at § 416.927(c)(2); *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 416.927(c)(2)(i)-(iv). The ALJ is required to set forth her reasons for the weight she assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

### i.) Treating Orthopedist Ralph Quade, M.D.

Plaintiff received orthopedic care from Dr. Quade. On February 12, 2013, Dr. Quade examined Plaintiff. (T. 471.) At that time, Dr. Quade reviewed radiographs which indicated normal spinal alignment, well maintained disc spaces, and normal SI joints. (*Id.*) Dr. Quade prescribed Naprosyn and physical therapy. (*Id.*) Dr. Quade stated that Plaintiff did not have "any real significant disability from his back problem, although it was chronic in nature." (*Id.*) He further stated that Plaintiff could work "without any specific restrictions." (*Id.*)

On April 9, 2013, Dr. Quade opined that Plaintiff's pain appeared to be muscular in nature and that overall Plaintiff's back seemed to be "somewhat better." (T. 469.) Plaintiff complained of neck pain with "no particular limitations [] with extension and

flexion." (*Id.*) On examination, Plaintiff's shoulder motion was full, but he had "some discomfort." (*Id.*) X-rays showed no significant degenerative changes, alignment was normal, and Plaintiff had normal cervical lordosis. (*Id.*) Dr. Quade indicated Plaintiff had muscular strain in his neck and recommended that Plaintiff continue with physical therapy. (*Id.*)

In June of 2013, Dr. Quade noted Plaintiff successfully completed physical therapy. (T. 467.) Dr. Quade reviewed a physical therapist report which indicated Plaintiff had good range of motion in his back with good strength of hip flexors, extensors, abductors and abdominal musculature with only "very, very slight deficits" and Plaintiff reported "some occasional back and leg pain." (*Id.*) Dr. Quade stated he "really feels [Plaintiff] has no significant disability with the use of his back." (*Id.*) Dr. Quade noted that Plaintiff expressed concerns with lifting and provided a script for a functional capacity evaluation ("FCE"). (*Id.*)

On October 8, 2013, Plaintiff returned to Dr. Quade with the results of his FCE and complaining of right hand pain. (T. 465.) Dr. Quade noted that the FCE determined Plaintiff was capable of sedentary work. (*Id.*) X-rays of Plaintiff's hand showed a "normal bony architecture." (*Id.*) Dr. Quade noted Plaintiff's right hand pain was "simply muscular discomfort." (*Id.*) Dr. Quade also reviewed objective imagining of Plaintiff's hips and pelvis and noted results showed normal bony architecture with no arthritic changes. (*Id.*)

On November 4, 2014, Plaintiff returned to Dr. Quade. (T. 647.) Dr. Quade observed on examination that Plaintiff's straight leg raise was negative and he had discomfort leaning forward to 45 degrees or side bending to 15 degrees. (*Id.*) Dr.

Quade indicated that X-rays and other studies showed "no obvious abnormalities" and "[b]asically, [Plaintiff] has musculoskeletal symptoms." (*Id.*) Dr. Quade stated that he was "at a loss to offer any further treatment." (*Id.*) Dr. Quade stated "[h]e already had a functional capacity evaluation performed and I feel that he is suitable for [] sedentary work." (*Id.*)

### ii.)    Consultative Orthopedic Examiner, Joseph Prezio, M.D.

On July 31, 2014, Dr. Prezio performed a consultative orthopedic examination, provided a medical source statement, and completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form. (T. 578-587.)

On examination, Dr. Prezio observed that Plaintiff's gait was normal, he could not stand on his heels or toes, his squat was limited to 20 degrees, he used no assistive device, and he needed no help changing for the exam, getting on and off the exam table, or rising from a chair. (T. 579.) He observed Plaintiff had 5/5 grip strength with his right hand and 3/5 with his left, and he did not retain the ability to zip, button, and tie. (*Id.*) On examination, Plaintiff's cervical spine showed normal range of motion with no pain, spasms, or trigger points. (*Id.*) On examination, Plaintiff had full range of motion in his right shoulder and full range of motion in his elbows, forearms, wrists, and fingers. (*Id.*) Plaintiff had decreased range of motion in his left shoulder and pain and tenderness in his left shoulder area. (T. 579-580.) Dr. Prezio noted Plaintiff had "definite sensory abnormality from the lower arm into the forearm area." (T. 580.) Plaintiff's lumbar spine had decreased range of motion and tenderness over the "very extreme portion of the lumbar spine with no paralumbar spasm." (*Id.*) He had negative

straight leg raises bilaterally and no trigger points.  (*Id.*)  On examination, Plaintiff had full range of motion and full strength in his hips, knees, and ankles.  (*Id.*)

In a medical source statement, Dr. Prezio opined that Plaintiff had "moderate" restrictions with "prolonged standing, walking, squatting, kneeling, bending, or doing any heavy lifting."  (T. 580.)  Dr. Prezio stated these restrictions were due to Plaintiff's lumbar "compromise" noted on examination.  (*Id.*)  He further opined that Plaintiff had "marked restrictions" for fine and gross movement of the left shoulder.  (T. 581.)

In his medical source statement form, Dr. Prezio indicated that Plaintiff could never lift and carry any weight due to his left shoulder limitation.  (T. 582.)  He opined that, in an eight hour work day, Plaintiff could sit for four hours at one time, stand for an hour at one time, and walk for thirty minutes at one time.  (T. 583.)  He opined that, in an eight hour work day, Plaintiff could sit for a total of eight hours, stand for a total of two hours, and walk for a total of one hour.  (*Id.*)  He opined Plaintiff could frequently use his right hand and never use his left hand.  (T. 584.)  He opined Plaintiff could frequently use his right foot and occasionally to frequently use his left foot.  (*Id.*)  He opined Plaintiff could never perform postural activities.  (T. 585.)  He opined Plaintiff could never work from unprotected heights, with moving mechanical parts, or operate a motor vehicle.  (T. 586.)  He opined Plaintiff could occasionally tolerate: humidity and wetness; dust, odors, fumes and pulmonary irritants; extreme cold; extreme heat; and vibrations.  (*Id.*)

### iii.)    Brenda Breen, OTR/L with Sunnyview Rehabilitation Hospital

On September 26, 2013, Ms. Breen conducted a FCE at Sunnyview Rehabilitation Hospital.  (T. 480-484.)  Ms. Breen noted that prior to the evaluation

Plaintiff did not take his pain medication.  (T. 480.)  She encouraged him to do so and after thirty minutes his pain level decreased from 7/10 to 3/10.  (*Id.*)

During the evaluation, Plaintiff's range of motion and strength in his bilateral upper extremities was within normal limits ("WNL").  (T. 481.)  The report contained grip and pinch tests which appeared to indicate that Plaintiff's grip and pinch were below average for his age and gender.  (T. 481.)  Plaintiff had intact sensation in his upper and lower extremities.  (T. 482.)  Plaintiff reported at one part of the exam that he had difficulty walking (T. 480); however, he also reported he could perform "unlimited" walking (T. 482).  The report stated that in a sixty minute evaluation Plaintiff could safe lift a maximum of 20 pounds from floor to table and frequently lift 10 pounds from floor to table.  (T. 482.)  The report further indicated that Plaintiff could maximum safe carry 20 pounds with his bilateral upper extremities and whole body push 105 pounds.  (*Id.*)  The report also contained a repetitive motions of the spine and upper extremities report and "spinal function sort."  (T. 483.)  The spinal function sort was based on "client's perception of his ability to perform daily activities" and Ms. Breen noted Plaintiff's "perceived capacity score" corresponded to sedentary work.  (*Id.*)  The report did not contain an objective assessment of Plaintiff's ability to sit, stand, or walk.  In sum, the report stated that Plaintiff could perform sedentary work as defined by the U.S. Department of Labor, in that sedentary work required occasional lifting of ten pounds and frequent lifting of a negligible amount.  (*Id.*)

### iv.)    Independent Medical Examiner, Charles Plotz, M.D.

On February 15, 2015, Dr. Plotz reviewed Plaintiff's record and completed a written medical interrogatory.  (T. 677-685.)  Dr. Plotz concluded that based on the

medical evidence in the record, such as physical examinations and MRI results, Plaintiff had "restriction of use of his left arm . . .[h]e should be able to do light work as defined." (T. 679.)

Dr. Plotz completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form.  (T. 680-685.)  Therein, he opined Plaintiff could frequently lift and carry up to ten pounds and occasionally lift and carry up to 20 pounds.  (T. 680.)  He opined that in an eight hour workday Plaintiff could, at one time, sit for four hours, stand for six hours, and walk for six hours.  (T. 681.)  He opined that Plaintiff could, in an eight hour workday, sit for a total of eight hours, stand for a total of six hours, and walk for a total of six hours.  (*Id.*)  Dr. Plotz opined that Plaintiff could frequently use his right upper extremity and occasionally use his left upper extremity.  (T. 682.)  He opined Plaintiff could frequently use his feet.  (*Id.*)  He opined Plaintiff could frequently: climb stairs and ramps; balance; stoop; kneel; and crouch.  (T. 683.)  Dr. Plotz opined Plaintiff could occasionally climb ladders or scaffolds and crawl.  (*Id.*)  He opined that Plaintiff could frequently tolerate exposure to environmental conditions.  (T. 684.)

In formulating his RFC determination, the ALJ afforded Dr. Plotz's opinion "great weight" reasoning Dr. Plotz had access to the longitudinal evidence in the record.  (T. 18.)  The ALJ afforded Dr. Prezio's opinion "some weight."  (*Id.*)  The ALJ reasoned Dr. Prezio's opinion was not supported by objective evidence in the record or by the doctor's own examination.  (*Id.*)  The ALJ afforded Dr. Quade's opinion, that Plaintiff could perform sedentary work, "some weight."  (*Id.*)  The ALJ reasoned that although Dr. Quade was a treating source, the doctor's opinion was inconsistent with his own findings and the evidence in the record.  (*Id.*)  The ALJ afforded Ms. Breen's FCE report

"little weight." (*Id.*)  The ALJ stated that Ms. Been was not an acceptable medical source and her own observations did not support the findings.  (T. 18-19.)

Plaintiff asserts that the ALJ erred in the weight she afforded to all of the providers in the record.  First, Plaintiff argues that the ALJ erred in affording Dr. Quade's opinion "some weight," because the ALJ substituted her own lay opinion of the medical evidence for that of the doctor and other substantial evidence in the record supported Dr. Quade's opinion that Plaintiff was limited to sedentary work.  (Dkt. No. 14 at 12-19 [Pl.'s Mem. of Law].)

In affording weight to Dr. Quade's opinion, the ALJ properly concluded that the doctor's conclusion, that Plaintiff was "suitable for sedentary work," was inconsistent with treatment history and the doctor's own findings.  (T. 18.)  Contrary to Plaintiff's contention, the ALJ did not substitute his own lay interpretation of raw medical findings, instead the ALJ properly resolved conflicts in the record. *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.").

The ALJ properly concluded Dr. Quade's opinion was inconsistent with the doctor's treatment notations.  Indeed, as outlined herein, Dr. Quade consistently noted normal objective medical imaging and findings on examination.  The only positive finding on a physical exam was "discomfort" when leaning forward to 45 degrees and side bending to 15 degrees.  (T. 647.)  Dr. Quade opined that Plaintiff had "no significant disability with the use of his back" and that he could "work without any specific restrictions."  (T. 467, 471.)  Therefore, the ALJ properly noted that Dr. Quade's statement was inconsistent with his own treatment notes.  *See Domm v. Colvin*, 579 F.

App'x 27 (2d Cir. 2014) (the ALJ had properly pointed to substantial evidence for giving a treating source statement only probative weight, noting that the restrictive assessment was inconsistent with, among other factors, the source's own treatment notes).

Further, contrary to Plaintiff's contention, there was no indication that the ALJ "minimized" the importance of Dr. Quade's treatment relationship. (Dkt. No. 14 at 15 [Pl.'s Mem. of Law].) The ALJ thoroughly outlined all of Dr. Quade's treatment notations in her decision and acknowledged the doctor as Plaintiff's treating orthopedic physician. (T. 15-18.)

Second, Plaintiff contends the ALJ failed to provide proper weight to Dr. Prezio's opinion. (Dkt. No. 14 at 15-17 [Pl.'s Mem. of Law].) In affording Dr. Prezio's opinion weight, the ALJ properly noted that the doctor's extreme restrictions were not supported by his findings on examination or the medical evidence in the record. (T. 18.) In support of her determination, the ALJ cited specific evidence from the record. (*Id.*) Indeed, Dr. Prezio's opinion was inconsistent with his findings that, aside from reduced range of motion in the left shoulder and lumbar spine, Plaintiff had full range of motion and full strength throughout his extremities, an intact gait, no back spasms, negative straight leg raises, and tenderness in the "very extreme" portion of his lumbar spine. (T. 579-580); *see generally Pellam v. Astrue*, 508 F. App'x 87, 89-90 (2d Cir. 2013) (there is no requirement that an ALJ accept the opinion of a consultative examiner).

Third, Plaintiff argues the ALJ should have afforded the FCE conducted by Ms. Breen more weight. (Dkt. No. 14 at 19 [Pl.'s Mem. of Law].) The ALJ properly accorded little weight to Ms. Breen's FCE report. (T. 18.) As stated by the ALJ, Ms. Breen is not an acceptable medical source under 20 C.F.R. § 416.913(a). (*Id.*) The ALJ further

14

noted that the FCE was inconsistent with Ms. Been's observations.  For example, a limitation to sedentary work was inconsistent with Ms. Breen's observation that Plaintiff could lift 20 pounds from floor to table.  (T. 18-19.)  Also of note, Plaintiff testified at the hearing he was capable of lifting and carrying 25 pounds.  (T. 84.)  The ALJ took into consideration the fact that the FCE evaluation did not test Plaintiff's ability to sit, stand, or walk.  (T. 19.)  Therefore, the ALJ properly afforded Ms. Breen's FCE report "little weight," because Ms. Breen was not an acceptable medical source, the FCE findings were inconsistent with other evidence in the record, and inconsistent with observations made during the examination.  *Holmberg v. Comm'r of Soc. Sec.,* No. 6:15-CV-1022 (GTS/WBC), 2016 WL 6091245, at *4 (N.D.N.Y. Sept. 21, 2016), *report and recommendation adopted sub nom. Holmberg v. Colvin*, No. 6:15-CV-1022 (GTS/WBC), 2016 WL 6090873 (N.D.N.Y. Oct. 18, 2016) ("The ALJ properly afforded Mr. Carter's assessment "little weight," because Mr. Carter was not an acceptable medical source under 20 C.F.R. § 404.1513(a), he had no treating relationship with Plaintiff, the FCE findings were inconsistent with the overall record, including notations made during the FCE which questioned the validity of Plaintiff's efforts, and the report was largely based upon Plaintiff's subjective reporting."); *see Russitano v. Colvin*, No. 6:14-CV-403, 2015 WL 4496383, at *6 (N.D.N.Y. July 23, 2015) (ALJ properly accorded little weight to FCE).

Fourth, Plaintiff argues Dr. Plotz's opinion should have been afforded no weight because he never examined Plaintiff, he did not cite to specific exhibits in the record, and his certification was in internal medicine and not orthopedics.  (Dkt. No. 14 at 17-19 [Pl.'s Mem. of Law].)  Plaintiff argues that a non-examining doctor's opinion alone

cannot constitute substantial evidence to overrule a treating doctor's opinion.  (*Id.* at

17.)  However, it is well settled that an ALJ is entitled to rely upon the opinions of both

examining and non-examining State agency medical consultants, since such

consultants are deemed to be qualified experts in the field of social security disability.

*See* 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e).   "[A]n ALJ is entitled to rely

upon the opinions of both examining and non-examining State agency medical

consultants, since such consultants are deemed to be qualified experts in the field of

social security disability."  *Baszto v. Astrue,* 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010);

*see also Snyder v. Colvin*, 667 F. App'x 319 (2d Cir. 2016); *see also Camille v. Colvin,*

652 F. App'x. 25, 28 (2d Cir. 2016); *see also Lugo v. Comm'r of Soc. Sec.*, No. 3:16-CV-

0746 (GTS), 2017 WL 4005621, at *9 (N.D.N.Y. Sept. 11, 2017) ("Notably, although

[non-examining State agency medical expert] did not treat or examine Plaintiff, he did

review all the records prior to offering an opinion and the ALJ was entitled to rely on his

opinion if it was consistent with the evidence.").

Plaintiff contends that substantial evidence in the record, namely the opinion of

Dr. Quade, Dr. Prezio, and the FCE, support a finding that Plaintiff retained the RFC to

perform sedentary work.  (Dkt. No. 14 at 15-17 [Pl.'s Mem. of Law].)  However, under

the substantial evidence standard of review, it is not enough for Plaintiff to merely

disagree with the ALJ's weighing of the evidence or to argue that the evidence in the

record could support her position.  Plaintiff must show that no reasonable factfinder

could have reached the ALJ's conclusions based on the evidence in record.  *See Brault*

*v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *see also Wojciechowski*

*v. Colvin,* 967 F.Supp.2d 602, 605 (N.D.N.Y. 2013) (Commissioner's findings must be

sustained if supported by substantial evidence even if substantial evidence supported the plaintiff's position); *see also Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991) (reviewing courts must afford the Commissioner's determination considerable deference and cannot substitute own judgment even if it might justifiably have reached a different result upon a *de novo* review).

For the reasons stated herein, the ALJ afforded proper weight to the medical opinion evidence, and the FCE, in the record. The ALJ afforded great weight to, and relied heavily on, Dr. Plotz's opinion in formulating her RFC determination. Because the ALJ properly weighed the evidence in the record, and properly relied on Dr. Plotz's statement in formulating her RFC finding, it is recommended that the ALJ's RFC determination be upheld.

### B.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

The ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. *See* 20 C.F.R. § 416.929. First, the ALJ must determine whether, based on the objective medical evidence, a plaintiff's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 416.929(a). Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. *See id.*

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms; however, the Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely credible. (T. 15, 17-18.) Plaintiff asserts that the ALJ erred in her credibility assessment because she cited poor compliance with treatment without taking into consideration Plaintiff's reasoning, she erroneously took into consideration

Plaintiff's attempt to find a job, and she failed to discuss his activities of daily living. (Dkt. No. 14 at 20-21 [Pl.'s Mem. of Law].)

Here, the ALJ's credibility determination was made in accordance with the Regulations and supported by substantial evidence.  First, the ALJ provided an accurate accounting of Plaintiff's physical therapy sessions.  The ALJ noted that from March to June 2013 Plaintiff completed 20 physical therapy sessions, which ended because he exhausted the amount of sessions allowed by insurance.  (T. 16.)  The ALJ summarized the physical therapy discharge notations which indicated Plaintiff had good range of motion in his back and good strength in his hips with only "very, very, slight deficits" in the abdominal musculature.  (*Id.*)  The ALJ noted later on in her decision, that Plaintiff pursued physical therapy again in September 2014.  (T. 17.)  The ALJ once again accurately noted that Plaintiff requested to discontinue therapy due to no benefit.  (*Id.*)  Indeed, therapy notations dated October 15, 2014 indicated Plaintiff's compliance was "poor."  (T. 646.)  The notation further stated that Plaintiff "reports the pool temp is too cold and that he is not getting benefit from it" and Plaintiff "is requesting [discontinuance] due to no change, he has been given thorough [home exercise program] to [continue] at home."  (*Id.*)  The ALJ accurately summarized the treatment notations and properly took Plaintiff's treatment modality, and poor compliance with treatment, into consideration as a part of her credibility analysis.  *See* 20 C.F.R. § 416.929(c)(3)(v)-(vi).

Plaintiff also contends that the ALJ should not have considered his attempts to find a job after his alleged onset date.  (Dkt. No 14. At 20 [Pl.'s Mem. of Law].) However, Plaintiff's work history and attempts to work, are factors an ALJ may consider

in her credibility analysis.  *See* 20 C.F.R. 416.929(c)(3)(vii); *see also* SSR 96-7p, 1996 WL 374186, at *5 (1996) (statements regarding efforts to work may be considered in a credibility analysis).

Lastly, Plaintiff's assertion that the ALJ failed to consider his activities of daily living is without merit.  The ALJ summarized Plaintiff's testimony, including his activities of daily living, in her decision.  (T. 15, 17-18.)

It is recommended that the ALJ's credibility determination be upheld because the ALJ properly summarized Plaintiff's testimony and evidence in the record, the ALJ followed the Regulations, and substantial evidence in the record supported her determination.

### C.    The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.920(f); *Heckler v. Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).  The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid").  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).

The ALJ determined that based on Plaintiff's date of birth, he was 47 years old at the date of his application and therefore a "younger individual."  (T. 19.)  The ALJ further determined that Plaintiff had a limited education, was able to communicate in English,

and transferability of jobs skills was not an issue because Plaintiff had no past relevant work.  (*Id.*)  Therefore, the ALJ determined that based on Plaintiff's age, education, work experience, and RFC there were jobs that existed in the national economy that Plaintiff could perform.  (*Id.*)

Plaintiff asserts that the ALJ erred in her step five determination because she erroneously based her determination on Plaintiff's age at the time of his application, rather than his age at the time of his amended onset date.  (Dkt. No. 14 at 22 [Pl.'s Mem. of Law].)  Plaintiff essentially argues that had the ALJ used the amended onset date to determine Plaintiff's age, the ALJ would have determined that Plaintiff was in a "borderline" age situation and classified him as "an individual closely approaching advance age" which, along with Plaintiff's education, work experience, and RFC for sedentary work, would warrant a finding of "disabled" under the Grids.

As of September 19, 2012 (application date), Plaintiff was 47 years old.  Therefore, at the date of his application for benefits, Plaintiff was a "younger person." 20 C.F.R. § 416.963(c).  An individual age 50 is classified as a "person closely approaching advanced age."  *Id.* at § 416.963(d).  As of September 29, 2014 (amended onset date), Plaintiff was 49 years and six months old, only six months away from his 50th birthday.  Plaintiff asserts that his age fell in a "borderline age" situation as of his amended onset date and the ALJ would therefore be compelled to "round up" his age to 50.  As of May 6, 2015, the date of the ALJ's decision, Plaintiff was 50 years old.

The regulations do not provide any bright-line rule for determining which cases are "borderline."  SSR 83-10 states that: "No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a

mechanical approach." SSR 83-10, 1983 WL 31251, at *8. The SSA's Hearings, Appeal and Litigation Law Manual *209 ("HALLEX") provides the following guidance:

> If a claimant is within a few days to a few months of reaching an older age category [. . .], and using the higher age category would result in a determination of decision that the claimant is disabled, SSA will consider whether to use the higher age category after evaluating the overall impact of all the factors of the case. *See* 20 C.F.R. 404.1563 and 416.963.
>
> SSA does not have a precise programmatic definition for the phrase "within a few days to a few months." The word "few" should be defined using its ordinary meaning, e.g., a small number. Generally, SSA considers a few days to a few months to mean a period not to exceed six months.

HALLEX I-2-2-42, Borderline Age, 2016 WL 1167001, at *1 (Mar. 25, 2016).

Most district courts within the Second Circuit follow the HALLEX and hold that a period of up to six months is borderline. *Torres v. Comm'r of Soc. Sec.,* No. 14-CV-6438, 2015 WL 5444888, at *10 (W.D.N.Y. Sept. 15, 2015) (collecting cases); *Souliere v. Colvin,* No. 2:13-CV-236 (JME), 2015 WL 93827, at *5 (D. Vt. Jan. 7, 2015) (same).

Here, the question of whether or not Plaintiff's age fell into a borderline age situation is moot. For the purpose of an application for SSI under Title XVI, cases from our sister district have determined that the relevant date for calculating a plaintiff's age is the date of the ALJ's decision. *See Hollinsworth v. Colvin*, No. 15-CV-543 (FPG), 2016 WL 5844298, at *5 (W.D.N.Y. Oct. 6, 2016) (citing *Koszuta v. Colvin*, No. 14-CV-694 (JTC), 2016 WL 824445, at *2 (W.D.N.Y. Mar. 3, 2016) (collecting cases)). Further, under the HALLEX, ALJs are directed to assess whether a plaintiff reaches, or will reach, the next higher age category within a few days to a few months after the date of adjudication. HALLEX I-2-2-41, 2016 WL 1167001, at *1. Therefore, under the

guidance of *Hollinsworth* and the HALLEX, Plaintiff's age at the date of the ALJ's determination is the relevant age.

However, for the reasons discussed below, any error the ALJ may have made at step five in determining Plaintiff's age is harmless. Plaintiff's age would be an essential issue, had the ALJ found Plaintiff capable of sedentary work. A finding of "disabled" would be warranted under the Grids for an individual "closely approaching advanced age," together with other vocational factors, and an RFC for sedentary work. 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 201.

Here, for the reasons outlined above, the ALJ's RFC determination for light work was proper and supported by substantial evidence. Under the Grids an individual with Plaintiff's RFC, education, work experience, and age - either "closely approaching advanced age" or a "younger individual" - is considered "not disabled." 20 C.F.R. § Pt. 404, Subpt. P, App. 2, Medical-Vocational Rule § 202.

Therefore, any error the ALJ may have made is using Plaintiff's filing date was harmless because regardless of Plaintiff's age category, he would be found not disabled under the Grids. Of note, Plaintiff does not argue that the ALJ erred at step five based on her RFC determination for light work. Therefore, it is recommended that the ALJ's step five determination be upheld.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report.

Any objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:         September 28, 2017

William B. Mitchell Carter
U.S. Magistrate Judge